## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **Suresh Kumar,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Frisco Independent School District, Frisco** | § | **CIVIL ACTION NO. 4:19-cv-284** |
| **Independent School District Board of** | § | |
| **Trustees, and Rene Archambault, John** | § | |
| **Classe, Debbie Gillespie, Natalie Hebert,** | § | |
| **Anne McCausland, Gopal Ponangi, and** | § | |
| **Chad Rudy, in their official capacities,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND PERMANENT INJUNCTIVE RELIEF CONCERNING VIOLATIONS OF SECTION 2 OF THE VOTING RIGHTS ACT AND THE FOURTEENTH AND FIFTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

**BREWER STOREFRONT**

By:  */s/ William A. Brewer III*
      William A. Brewer III
      State Bar No. 02967035
      wab@brewerattorneys.com
      Michael J. Collins
      State Bar No. 00785493
      mjc@brewerattorneys.com
      Dallas Z. Flick
      State Bar No. 24104675
      dff@brewerattorneys.com
      1717 Main Street, Suite 5900
      Dallas, Texas 75201
      Telephone: (214) 653-4000
      Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................................1

II. JURISDICTION AND VENUE...............................................................................3

III. PARTIES ...............................................................................................................4

    A.    Plaintiff .........................................................................................................4

    B.    Defendants ....................................................................................................6

IV. FACTS ...................................................................................................................8

    A.    The Frisco Independent School District .................................................8

    B.    FISD's Current At-Large Election System Discourages Minority Participation In The Electoral Process ...................................................9

    C.    FISD's White Trustees Do Not Represent A Significant Portion Of This Diverse Multiethnic, Multiracial, And Multilingual Community...........................9

    D.    FISD's At-Large System Fails Voters and Students of Colo ...............................10

    E.    The Discriminatory Effects Of FISD's Electoral System Upon Minority Voters and Students. ..........................................................................................12

    F.    Absent Judicial Intervention, The Current Discriminatory Electoral System Will Remain In Place ...................................................................................14

V. CLAIMS...................................................................................................................15

    A.    Count 1:  Declaratory Relief For Violations Of Section 2 Of The Voting Rights Act ...................................................................................................15

    B.    Count 2: Declaratory Relief for Violations Of The Fourteenth And Fifteenth Amendments Of The Constitution .........................................................16

    C.    Count 3:  Injunctive Relief For Violations Of The Voting Rights Act And Fourteenth And Fifteenth Amendments Of The Constitution ...............................17

    D.    Count 4:  Request For Reward of Attorneys' Fees and Costs. .............................17

VI. REQUESTS FOR RELIEF.....................................................................................18

Plaintiff Suresh Kumar files this Complaint for Declaratory and Permanent Injunctive Relief Concerning Violations of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the United States Constitution ("Complaint") against defendants Frisco Independent School District ("FISD", or "District"), Frisco Independent School District Board of Trustees ("Board of Trustees"), and Rene Archambault, John Classe, Debbie Gillespie, Natalie Hebert, Anne McCausland, Gopal Ponangi, and Chad Rudy, in their official capacities as members of the FISD Board of Trustees (each individually, a "Trustee", and collectively, the "Trustees", "Board", or "Defendants"), as follows:

## I.

## PRELIMINARY STATEMENT

1.     Elected school board trustees, responsible for the oversight, financing, and management of public-school systems, hold some of the most important positions in representative government, as they oversee the way in which school systems serve the community and educate its future generations.  Unfortunately, when the electoral process from which these officials are chosen denies certain voters a meaningful voice in the political process, those elected bodies cease to be "representative" of the communities they are charged to serve.  When that occurs, it is not surprising that the governmental body fails to serve the best interests of those lacking representation.

2.     The at-large system for electing the seven-member FISD Board, as currently used by the District, effectively denies representation to Asian voters, Hispanic voters, African American voters, and other people of color.  Worse, the at-large system blocks diverse representation, even as people of color comprise a significant portion of eligible voters within FISD—and the majority of the District's student population.

1

3.     In the aggregate, FISD is racially and ethnically diverse, with students of color forming more than 58% of the total student body of 60,581 students as of mid-January 2019. Specifically, FISD's student enrollment is approximately 41.6% White, 29.1% Asian, 13.5% Hispanic, 11.0% African-American, and 4.1% multiracial (two or more races).  FISD's Board, however, does not reflect FISD's diverse multiracial student and community population.  FISD schools are diverse, but the seat of power—the FISD Board—is segregated, secretive, and exclusive.  Indeed, just prior to the May 2019 school board election, all six of the current Trustees on the Board were White, and five of the six Trustees lived in the affluent neighborhoods in the western portion of FISD. Additionally, prior to the resignation of one trustee before the election in May 2019, [1] all seven elected officials were White. Following the election, six of seven trustees are White.  Notably, over the past four years prior to the May 2019 election, seven persons of color have unsuccessfully run for various trustee positions on the FISD Board and lost. In each of the aforementioned elections, the candidate of color lost to a White candidate who was elected to the Board.  The losses of candidates of color are the result of a discriminatory electoral system that permits the District's White population to dominate the Board and to deny representation to non-White voters.

4.     Mr. Kumar brings this Complaint because the at-large election system employed by FISD denies equal voting opportunity to voters of color, many of whom are parents of children enrolled in FISD schools, thereby denying them the opportunity to elect candidates of their choosing to represent their communities.  Accordingly, Mr. Kumar seeks judicial relief for

---

[1] On March 22, 2019, Trustee Bryan Dodson from Place 1 resigned from the Board, citing that he obtained a minority interest in a company that has historically done business with FISD and wished to avoid any appearance of a conflict of interest.  Dodson is White, and like the majority of the current Trustees, he lives in the western portion of FISD.

violations of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 (the "Voting Rights Act") and the Fourteenth and Fifteenth Amendments of the United States Constitution.

5.     Specifically, Mr. Kumar requests that the Court issue an injunction prohibiting FISD, its Trustees, agents, and all persons acting in concert with them, from administering, implementing, or conducting any future elections for the Board under an at-large electoral system, and a declaratory judgment declaring that the current at-large system in FISD violates federal law. This relief will ensure that Mr. Kumar's voice—and the voices of the community—are properly factored into the decisions affecting FISD students and the School District to which they belong.

6.     A growing suburban school district such as FISD should not be burdened by an antiquated election system from the past. The current at-large election system discriminates against many of the District's residents – and prevents FISD from realizing a more inclusive future.

## II.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to:  (1) 28 U.S.C. § 1331, which grants United States District Courts original jurisdiction over any civil action "arising under the . . . laws . . . of the United States[,]"; (2) 28 U.S.C. § 1343(a)(3), which grants District Courts original jurisdiction over any civil action to redress a deprivation of any right secured by a law of the United States "providing for the equal rights of citizens within the jurisdiction of the United States[,]"; and (3) 28 U.S.C. § 1343(a)(4), which grants District Courts original jurisdiction over any civil action under "any Act of Congress providing for the protection of civil rights, including the right to vote."

8.     This Court has personal jurisdiction over FISD because the District is primarily located in Collin County, Texas, but also partially located in Denton County, Texas.  This Court

also has personal jurisdiction over the Board of Trustees, because the seven Trustees reside in Collin County and Denton County, which are both within the Eastern District.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in the State of Texas and all reside in the Eastern District.

## III.

## PARTIES

### A.      Plaintiff

10.      Mr. Kumar is a United States citizen and registered voter who resides within the boundaries of FISD.  Mr. Kumar is an active member of his community and a respected Certified Public Accountant.  Mr. Kumar currently serves as the Precinct Chair for the Collin County Republican Party.

11.      Mr. Kumar moved from India to the United States in 1994. He has been a United States citizen since 2006. Attracted to FISD because of its growing economy and the diversity of its population, he and his family bought a home in the City of Frisco, within FISD, in 2014. He has two daughters who attend FISD schools, and he has a deep personal interest in the academic success of the school district.

12.      Mr. Kumar, like many Indian Americans, moved to FISD because of its promise and potential.  In 2014, the same year that his family moved to FISD, The Dallas Morning News reported that Frisco schools' strong academic reputation was drawing families in India and other parts of the United States "in droves."[2]  The article noted that even from India, families were aware that Frisco had good schools, large homes, and a Hindu temple planned (that has since been built).

---

[2] *See* Eve-Maria Ayala, *Reputation of Frisco Schools Draws Families From India In Droves,* THE DALLAS MORNING NEWS (November 2014),

13.     Driven by his desire to see FISD place a greater emphasis on college readiness over competing activities such as athletics, Mr. Kumar sought unsuccessfully to become more involved in FISD by applying to roles on two school district leadership committees.  In 2016, he applied to serve on the FISD Priorities Based Budget Stakeholder Committee, and in 2018, he applied to serve on the FISD Long-Range Planning Committee.  Despite his professional finance background and previous college adjunct teaching positions, he was not selected for service on either committee.  Committee members are selected by FISD board members and administrators. Notably, the roster of neither committee appears to reflect FISD's diverse student enrollment. Furthermore, the budget committee in particular currently has no Asian American members listed among the 15 community members listed on the FISD website.

14.     Although FISD's population has diversified, the political leadership has not kept pace with the demographic changes. Mr. Kumar has watched with concern as seven candidates of color ran for the FISD board in recent years—and every one of those candidates lost.  Specifically, since 2015 (and prior to the May 2019 election), five Asian candidates and two Hispanic candidates ran for the board and lost. As a resident of the diverse eastern half of FISD and as an American of Indian origin, Mr. Kumar is concerned that his community and portion of the District are not adequately represented on the current FISD board. Indeed, only one of the seven current board members lives within the zones established by FISD for the high school that Mr. Kumar's daughter attends.

15.     Mr. Kumar believes that FISD will benefit from greater diversity and cultural sensitivity.  For example, he recalls that his daughter was questioned aggressively by a school

---

https://www.dallasnews.com/news/frisco/2014/11/04/reputation-of-frisco-schools-draws-families-from-india-in-droves.

assistant principal when she missed classes for a 13-day Hindu mourning period for her grandmother.

16.     Mr. Kumar raised the idea of implementing single-member voting districts in Frisco with Frisco City Council member Will Sowell, Chair of the Frisco Residents for Public Education PAC.  The PAC successfully pushed for voter passage of the FISD bond package and tax increase in November 2018.  Mr. Kumar raised the issue with Sowell due to Sowell's involvement in FISD education issues.   Unfortunately, Sowell was not receptive and "totally disagree[d] with the proposal."

**B.     Defendants**

17.     FISD is an Independent School District located largely in Collin County.  FISD may be served with process through Superintendent Mike Waldrip, at Frisco ISD, 5515 Ohio Drive, Frisco, Texas 75035.

18.     The Board of Trustees is a seven-member board that acts as FISD's policy-making body.  The Board of Trustees may be served with process through Superintendent Mike Waldrip, at Frisco ISD, 5515 Ohio Drive, Frisco, Texas 75035.

19.     Gopal Ponangi is a Trustee elected to Place 1 of the Board and resides within FISD. He may be served with process at 14937 Begonia Drive, Frisco, Texas 75035.

20.     Natalie Hebert is a Trustee elected to Place 2 of the Board and resides within FISD. She may be served with process at 6509 Simon Avenue, Frisco, Texas 75035.

21.     Chad Rudy is a Trustee elected to Place 3 of the Board, is the Vice President of the Board, and resides within FISD.  He may be served with process at 12186 Kennedale Dr., Frisco, Texas 75033.

22.     Anne McCausland is a Trustee elected to Place 4 of the Board and resides within FISD.  She may be served with process at 2209 Crowbridge Dr., Frisco, Texas 75033.

23.     Debbie Gillespie is a Trustee elected to Place 5 of the Board, is the Secretary of the Board, and resides within FISD.  She may be served with process at 4949 Printers Way, Apt. 170, Frisco, Texas 75033.

24.     John Classe is a Trustee elected to Place 6 of the Board, is the President of the Board, and resides within FISD.  He may be served at 14688 Ballentrae Dr., Frisco, Texas 75035.

25.     Rene Archambault is a Trustee elected to Place 7 of the Board and resides within FISD.  She may be served with process at 11542 La Cantera Ln., Frisco, Texas 75033.

26.     None of the seven trustees live south of Sam Rayburn Tollway, where there are many eligible voters who are people of color.  Four of the seven current Trustees live in the western portion of FISD's attendance boundaries. Furthermore, given the at-large voting system, some trustees live in close proximity to each other.  The majority of FISD's enrollment is comprised of students of color. However, four of the seven current Trustees live within boundaries for the minority of elementary schools with enrollments that are majority White. Significantly, these four Trustees live in boundaries for elementary schools that have the highest percentages of White students (ranging from 54.2%-74% of the student enrollments in 2017-18).

27.     Notably, four of seven Trustees live in attendance areas that do not demographically reflect the more diverse schools in FISD.  Two of the seven Trustees live within the attendance zone for Wakeland High School, which has the highest percentage of White students in FISD as of 2017-18 at 68% of the enrollment.  In sum, the majority of FISD Trustees live in neighborhoods and school attendance boundaries that do not reflect the demographics of FISD at large, while only three FISD Trustees live in school attendance boundaries for elementary schools that are majority minority in enrollment.

## IV.

## FACTS

**A.**     **The Frisco Independent School District**

28.     The story of FISD is a tale of rapid change in one of Dallas' most "coveted" suburbs.  The District's website characterizes FISD as "one of the fastest growing public school districts in the nation with new students joining us every day from across Texas, the nation and the world."[3]  FISD grew rapidly in recent years as one of the most popular Dallas outer-ring northern suburbs.  Fifteen years ago, during the 2003-04 school year, FISD enrolled just 13,284 students.  At the time, FISD also had a different demographic makeup: the student enrollment was about 71% White.

29.     Today, FISD is a majority-minority school district, meaning the population of racial or ethnic minorities make up a majority of the student population.  Students of color comprise over 57% of the total student population—current enrollment is 41.6% White, 29.1% Asian, 13.5% Hispanic, 11% African American, 4% Two or More Races, 0.53% American Indian/Alaskan, and 0.09% Hawaiian/Pacific Islander.  FISD serves students speaking 71 different languages.  Additionally, 12.53% of FISD students are classified as economically disadvantaged.

30.     FISD is located within Collin County and Denton County, Texas, and contains most of the City of Frisco, as well as portions of the cities of Plano, McKinney, and Little Elm.  FISD has an enrollment of over 60,000 students across 10 high schools, 17 middle schools, 42 elementary schools, and three special programs schools. FISD's amended budget as of March 31,

---

[3]     *See District Overview*, FRISCO ISD, https://www.friscoisd.org/about/district-overview/home (last visited April 12, 2019).

2019, is approximately $538 million, and the District's $691 million bond program passed in November 2018 will fund facilities to accommodate up to 72,000 students.

31.     The rich ethnic and racial diversity found in FISD is not seen at the highest level of power—the elected Board of Trustees.  Unfortunately, the Board has not accepted that as part of a booming suburban community, it must adapt to the dynamic reality of today and adopt an election system that encourages greater participation of all citizens and secures equality at the ballot box.

**B.     FISD's Current At-Large Election System Discourages Minority Participation In The Electoral Process.**

32.     Under the current at-large election system, all voters within FISD are permitted to vote on the candidates for every trustee position.  Trustees serve three-year, staggered terms in positions called "Places"—which have no geographic significance.  In other words, elected trustees do not represent any specific territory or sub-district within FISD.  The at-large system discourages minority or minority-preferred candidates from seeking office because it effectively functions as a White-controlled referendum on all candidates, where a bloc of White voters controls all seven trustee positions.

33.     As a result, the Board sets District policy without the input of or participation from the communities where the majority of students reside.  Taken together—the chilling effects of the at-large system and the obvious polarization between the White voters and all others—the current Board fails to reflect the composition of the real stakeholders of the public-school system.

**C.     FISD's White Trustees Do Not Represent A Significant Portion Of This Diverse Multiethnic, Multiracial, And Multilingual Community.**

34.     The FISD board is responsible for overseeing and managing a system of more than 70 campuses, with a budget of about $538 million and more than 60,000 students.  Although the composition of the FISD student body is significantly diverse, the makeup of the Board remains

White, affluent, and disconnected from the diverse multiethnic, multiracial, and multilingual community that the school district serves.

35.     The present FISD Board is comprised of six White Trustees.  Most of the Trustees reside in affluent neighborhoods in the western portion of FISD's attendance boundaries.  Further, they reside within the boundaries for the elementary schools with the highest respective percentage of White students in FISD.

36.     Thus, the current composition of the Board is geographically, racially, and socially representative of only a narrow slice of FISD's community.  The majority of FISD's students are people of color, but they and their parents remain largely unrepresented by the at-large voting system currently utilized in FISD.

**D.     FISD's At-Large System Fails Voters and Students of Color.**

37.     Based on the District's changing demographics, one would expect to see a subsequent increase in diversity in its teachers, leadership positions, and membership of the Board. Unfortunately—but not surprisingly, given the composition of the Board and the District's leadership—teacher hiring practices in FISD have not met this expectation.  In 2017-18, about 82% of FISD teachers were White.  Conversely, even though Asian students are FISD's largest minority group, only 2.2% of teachers were Asian.

38.     Incidents of overt racism periodically arise in FISD.  The Dallas Morning News reported that Centennial High School Assistant Football Coach Todd Campbell resigned in January 2016 after students reported that he made racist comments toward African American and Latino students.[4]  The News reported that the coach allegedly told African American students he

---

[4] *See* Eva-Marie Ayala, *Report: Frisco Centennial Assistant Coach Told Black Players He Would 'Hang Them From A Tree By Their Toes'*, THE DALLAS MORNING NEWS (March 2016),

would hang them from a tree by their toes if they misbehaved and also used the Spanish slang "esé" toward Latino students.  The News further reported that some community members worried the situation arose because of a lack of diversity at the school, with only one coach and associate principal who were African American at the campus.

39.     The lack of diverse representation on the Board and various leadership committees also causes the educational values and priorities of minority voters to be pushed to the periphery. Minority populations in FISD, along with the minority candidates who represent their collective interests, have sought to prioritize the quality of education in FISD, such as through strengthening FISD's curriculum, as well as through improving standardized test preparation and college readiness.  However, because minority voters cannot adequately have their voice heard, issues of lesser educational value continue to have priority, such as FISD's athletic programs and facilities.

40.     FISD has also concentrated poverty at two elementary campuses, Bright Academy and Christie Elementary School, where the majority of children attending are economically disadvantaged (respectively, 55.6% and 54.7% in 2017-18) and students of color. These campuses significantly lag behind FISD's district-wide performance. For example, Hispanic students made up nearly 59% of Christie's enrollment in 2018, and at the campus that year, only 27% of Hispanic students at the campus met grade level across all grades and subjects tested. Sadly, the average salary of teachers at Bright and Christie were respectively the lowest among elementary schools in the school district at $49,983 and $48,690.

---

https://www.dallasnews.com/news/news/2016/03/15/players-said-a-frisco-assistant-football-coach-made-racists-comments-to-them.

**E.      The Discriminatory Effects Of FISD's Electoral System Upon Minority Voters and Students.**

41.      FISD's at-large voting system prevents minority-preferred candidates from prevailing.  Minority-preferred candidates face a White voting bloc that represents nearly 67% of FISD's Citizen Voting Age Population, which blocks such candidates from virtually every trustee seat in the District.  The racial polarization leads to limited representation of—and ultimately indifference to—the interests of non-White communities in FISD.

42.      Additionally, Asians, Hispanics, African Americans and other minority voting populations within FISD are a "politically unified group" who vote cohesively as a bloc when a candidate of their choice is pitted against a White candidate.  Further, the voters of color in FISD are geographically compact, and if they were considered together, they would constitute a majority of eligible voters in at least one properly apportioned single-member electoral district.

43.      This system of bloc control by White voters in FISD has been evident.  FISD has a significant history of persons of color unsuccessfully running for trustee positions on the Board.  Since 2015, eight persons of color have run for trustee positions in different Places in the District and lost, obtaining anywhere between 9% to 36% of the overall vote.

44.      Out of the seven Asian candidates and two Hispanic candidates that ran for the board over the past four years, eight of the nine lost to White candidates who were elected FISD trustees.  The candidates who ran and lost were Muniraj Janagarajan in April 2019, Asanga Jayatilaka in Place 4 in May 2017, Grace Wang in Place 5 in May 2017, Anjali Shirvaikar in Place 2 in May 2016, Phil Ramirez in Place 2 in May 2016, Srikanth Gurrapu in Place 3 in May 2015, Carlos Gallardo in Place 7 in May 2015, and Rajesh Singh in Place 7 in May 2015.

45.      Previous candidates of color who unsuccessfully ran for FISD trustee positions often emphasized the improvement of education standards in FISD schools, as well as inclusion

of diverse population groups in the community.  For instance, in 2016, Anjali Shirvaikar ran for the Place 2 trustee position and came in second place, receiving 36% of the vote.  Shirvaikar had extensive experience working with FISD schools, as she served on school PTA and booster club boards for fourteen years.  Education was a point of focus for Ms. Shirvaikar as exhibited in 2014 by her son's perfect score of 2400 on the SAT.

46.    In another instance, in 2017, Grace Wang ran for the Place 5 trustee position and came in third place, receiving 16% of the vote.  Ms. Wang emphasized in her campaign the importance of communication and reaching out to FISD's diverse population: "I believe as we grow as a community and as a school district, we'll have a lot of people that are coming from different countries or moving in from other parts of the country, and there's a communication gap. There may be a language barrier or cultural barrier, and I truly cherish the idea of community inclusion."[5]

47.    The only candidate of color to successfully run for an FISD trustee position is Gopal Ponangi, the current Trustee for Place 1.

48.    Clearly, the FISD electoral system greatly hinders minority political participation and preclude effective representation of FISD's diverse student body.  Specific mechanisms contributing to this problem include: (1) at-large elections for all seven trustee positions on the Board; (2) staggered election terms; and (3) a District-wide plurality requirement.  There is no legitimate reason to continue along this path—the time is overdue for FISD to adopt a system that ensures that people of color have meaningful opportunity for full and fair participation in the election process.

---

[5] *See* Nicole Luna*, Grace Wang Announces Campaign For Frisco ISD Board Place 5*, COMMUNITY IMPACT NEWSPAPER (Feb. 1, 2017), https://communityimpact.com/dallas-fort-worth/city-county/2017/02/01/grace-wang-announces-campaign-frisco-isd-board-place-5/.

**F.      Absent Judicial Intervention, The Current Discriminatory Electoral System Will Remain In Place.**

49.      FISD's at-large voting system is a discriminatory means of facilitating elections for the District's trustee positions, and it must be changed.  Although "at-large . . . districting schemes are not per se unconstitutional . . . where the petitioner can demonstrate that 'its members had less opportunity than did other residents in the district to participate in the political processes and to elect legislators of their choice,'. . . such districting schemes are constitutionally infirm."[6]

50.      Across the country and even in the Dallas metro area, school districts with at-large election systems have recognized, either voluntarily or through judicial intervention, the inherent representational flaws in their voting structures and have switched to alternative voting structures, such as a single-member district system or cumulative voting system.

51.      Under single-member district elections, board seats are tethered to specific geographic areas of the school district. A single-member district system vests trustees with responsibility for the interests of actual communities, ensuring that all parts of the District participate in the Board's decision-making process.

52.      Alternatively, included in the Texas Education Code, the cumulative voting structure enables each voter to cast a number of ballots, for any one or more candidates in the manner of their choosing, equal to the number of positions to be filled at the election (Tex. Educ. Code Ann. § 11.054 (b)-(c)). Through this structure, the minority population is granted access to the electoral process, and the possibility of the dilution of their votes is diminished.  Under cumulative voting, each trustee is beholden to the community on the whole.  It has the potential to promote trustees from the more disadvantaged communities within the district.

---

[6] *Zimmer v. McKeithen*, 485 F.2d 1297, 1304–05 (5th Cir. 1973) (internal citations omitted).

14

53.     Indeed, a "court could design an at-large election plan that awards seats on a cumulative basis, or by some other method that would result in a plan that satisfies the Voting Rights Act."[7]

54.     The FISD electoral system violates Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the Constitution, and unless the Court directs FISD to design a single-member district structure or cumulative voting system that does not unlawfully dilute the votes of Asian, Hispanic, and African American voters, the current discriminatory system will persist.

## V.

## CLAIMS

A.     **Count 1:  Declaratory Relief For Violations Of Section 2 Of The Voting Rights Act**

55.     The allegations set forth in paragraphs 1–52 above are hereby incorporated as if fully set forth herein.

56.     Section 2 of the Voting Rights Act prohibits any standard, practice or procedure that results in the denial or abridgment of minority voting rights.  Specifically, it forbids any electoral system that denies African Americans, Hispanics, Asians, and other minority groups an opportunity equal to that afforded to other members of the electorate to elect representatives of their choice.

57.     FISD's at-large electoral system for electing its Board unconstitutionally dilutes the voting strength of African Americans, Hispanics, Asians, and other minority voting populations and is not equally open to participation by FISD's voters of color.  Further, the electoral system

---

[7] *Branch v. Smith*, 538 U.S. 254, 309-10 (2003).

results in African Americans, Hispanics, Asians, and other minority populations having less opportunity than other FISD voters to meaningfully participate in the electoral process and to elect representatives of their choice.

58.     The African American, Hispanic, Asian, and other communities of color in FISD are sufficiently large, geographically compact, and constitute a politically unified group that votes cohesively as a bloc, such that a properly-apportioned single-member electoral district can be drawn in which minorities would constitute a majority of eligible voters.

59.     FISD Board elections are characterized by racially-polarized voting in which the predominately White voting bloc votes in a way that regularly defeats the candidates of choice of African American, Hispanic, Asian, and communities of color and has a chilling and discouraging impact on participation from voters of color.  Thus, based on the totality of past and present circumstances, the FISD electoral system impermissibly dilutes the minority vote and stymies that community's ability to participate fully in the election process.

60.     Accordingly, Mr. Kumar requests that the Court issue a declaratory judgment that the FISD electoral system violates Section 2 of the Voting Rights Act.

**B.      Count 2: Declaratory Relief for Violations Of The Fourteenth And Fifteenth Amendments Of The Constitution**

61.     The allegations set forth in paragraphs 1–58 above are hereby incorporated as if fully set forth herein.

62.     FISD's at-large districting voting system deprives African American, Hispanic, Asian, and other voters of color equal protection of the law in violation of the Fourteenth and Fifteenth Amendments of the Constitution.

63.     The at-large system has been maintained for a discriminatory purpose and has the effect of diluting, minimizing, and canceling out the voting strength of people of color in violation of the Fourteenth and Fifteenth Amendments to the Constitution.

64.     Accordingly, Mr. Kumar requests that the Court issue a declaratory judgment that the FISD electoral system violates the Fourteenth and Fifteenth Amendments to the Constitution.

**C.     Count 3:  Injunctive Relief For Violations Of The Voting Rights Act And Fourteenth And Fifteenth Amendments Of The Constitution**

65.     The allegations set forth in paragraphs 1–62 above are hereby incorporated as if fully set forth herein.

66.     Unless enjoined, the FISD electoral system will remain in force and, therefore, FISD will continue to violate Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the Constitution by administering, implementing, and conducting future elections for Board members utilizing that unlawful system.

67.     Without the Court's intervention, the Board's actions and the electoral system will cause voters of color irreparable harm because the electoral system denies those voters the opportunity to fully participate in the electoral process by diluting the strength of their vote, for which there is no adequate remedy at law.

68.     Accordingly, Mr. Kumar requests that the Court enter a permanent injunction prohibiting Defendants from administering, implementing, and conducting future elections for the FISD Board based on the at-large electoral system.  Such relief is authorized by the Voting Rights Act as well as principles of equity.

**D.     Count 4:  Request For Reward of Attorneys' Fees and Costs.**

69.     The allegations set forth in paragraphs 1–66 above are hereby incorporated as if fully set forth herein.

70.     Because of FISD's unlawful electoral system, Mr. Kumar has been required to retain the undersigned counsel to present and prosecute the claims asserted herein.

71.     This action is a suit to enforce the voting guarantees of the Voting Rights Act. Pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b), Mr. Kumar is entitled to recover his reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses as part of his costs for pursuing this lawsuit.

## VI.

## <u>REQUESTS FOR RELIEF</u>

In light of the foregoing, Mr. Kumar respectfully requests that this Court enter judgment in his favor and against all Defendants, providing for the following relief:

(a)     A judicial declaration that the at-large method for electing members to the FISD Board violates Section 2 of the Voting Rights Act, and the Fourteenth and Fifteenth Amends to the United States Constitution;

(b)     A permanent injunction prohibiting FISD, its Trustees, agents, and all persons acting in concert with any of them, from administering, implementing, or conducting any future elections for the Board under an at-large electoral system;

(c)     An order directing FISD to devise an election plan and an implementation schedule that remedies the violations of Section 2 of the Voting Rights Act and U.S. Const. amend. XIV and XV.  If FISD fails to formulate such a plan, the Court should order into effect a new election plan of its own, designed to remedy the violations of Section 2 and U.S. Const. amend. XIV and XV, and order elections to be held pursuant to that plan as promptly as possible;

(d)      An order that all future elections for the FISD Board comply with Section 2 of the Voting Rights Act and U.S. Const. amend. XIV and XV;

(e)      An award of reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses pursuant to 52 U.S.C. § 10301(e) and 42 U.S.C. § 1988(b), and any other applicable statute;

(f)      An award of costs of Court; and

(g)      Any other relief, at law or in equity, to which Mr. Kumar is entitled and which this Court deems just and proper.

DATED: August 22, 2019                    Respectfully submitted,


**BREWER STOREFRONT, PLLC**


By: */s/ William A. Brewer III*
    William A. Brewer III
    State Bar No. 02967035
    wab@brewerattorneys.com
    Michael J. Collins
    State Bar No. 00785493
    mjc@brewerattorneys.com
    Dallas Z. Flick
    State Bar No. 24104675
    dff@brewerattorneys.com
    1717 Main Street
    Suite 5900
    Dallas, Texas 75201
    Telephone: (214) 653-4000
    Facsimile: (214) 653-1015

    **ATTORNEYS FOR PLAINTIFF**