# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SURESH KUMAR<br>    *Plaintiff*,<br>v.<br><br>FRISCO INDEPENDENT SCHOOL DISTRICT, ET AL.<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:19-CV-00284<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Objections to Plaintiff's Experts (Dkt. #46). Having considered Defendants' Objections and the relevant pleadings, the Court finds that Defendants' Objections are **OVERRULED**.

## BACKGROUND

The present action concerns allegations of voting rights discrimination brought pursuant to Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, and the Fourteenth and Fifteenth Amendments to the United States Constitution. Specifically, Plaintiff Suresh Kumar ("Kumar") alleges that, among other things, Frisco Independent School District ("FISD") and its Board of Trustees ("Board") (collectively "Defendants") have instituted an at-large electoral system which dilutes Mr. Kumar's votes" (Dkt. #81). Defendants deny all allegations.

In order to prevail on a Section 2 claim under the Voting Rights Act, a plaintiff must establish three factors commonly known as the *Gingles* factors. *See Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). To carry his burden in establishing each of the three *Gingles* factors, Kumar has proffered David Ely ("Mr. Ely") and Dr. Kenneth Mayer ("Dr. Mayer") as his experts (Dkt. #34; Dkt. #46). Mr. Ely, a demographer, is Kumar's designated expert as to the first *Gingles*

factor, while Dr. Mayer, a political scientist, is Kumar's designated expert as to the second and third *Gingles* factors (Dkt. #34; Dkt. #46).

On November 7, 2019, Defendants filed Defendants' Objections to Plaintiff's Experts (Dkt. #46). Defendants argue that Mr. Ely should be excluded because Mr. Ely allegedly utilized: (1) unreliable, disfavored surname data to calculate the Hispanic and Asian populations of FISD; (2) a "probability" standard to estimate the African American population in FISD; and (3) an "unconventional hybrid methodology to classify voters by race/ethnicity that allocates census block-group CVAP estimates to the individual census blocks that define his illustrative district" (Dkt. #46). Defendants also argue that Dr. Mayer should be excluded because his testimony on the second and third *Gingles* factors is predicated upon Mr. Ely's estimates (Dkt. #46).

On November 21, 2019, Kumar filed Plaintiff's Response to Defendants' Objections to Plaintiff's Experts (Dkt. #53). Kumar avers that Mr. Ely did not utilize a hybrid methodology and that his data is otherwise reliable (Dkt. #53). Consequently, Kumar also maintains that Dr. Mayer's testimony is predicated upon reliable data (Dkt. #53).

On December 3, 2019, Defendants filled Defendants' Reply to Plaintiff's Response to Defendants' Objections to Plaintiff's Experts (Dkt. #58). In their Reply, Defendants' expert, Dr. Peter Morrison, "amend[s his] belief" and concedes that Mr. Ely did not utilize a hybrid methodology to form his illustrative district (Dkt. #58, Exhibit 1). Nonetheless, Defendants argue that Mr. Ely and Dr. Mayer's opinions should be excluded.

On December 12, 2019, Kumar filed Plaintiff's Sur-Reply to Defendants' Reply to Plaintiff's Response to Defendants' Objections to Plaintiff's Experts (Dkt. #59). Kumar maintains that Mr. Ely and Dr. Mayer should be permitted to testify.

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally

accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Defendants argue that the Court should exclude Mr. Ely and Dr. Mayer from testifying because both experts ground their opinions in unreliable methodology and/or data. The Court does not find exclusion warranted.

"The primary purpose of the *Daubert* filter is to protect juries from being bamboozled by technical evidence of dubious merit, as is implicit in the courts' insistence that the *Daubert* inquiry performs a 'gatekeeper' function." *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2018 WL 2149736, at *4 (E.D. Tex. May 10, 2018) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003), *vacated on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005) (Posner, J., sitting by designation)). This is not to mean that a court must always prevent potentially questionable evidence from being considered at trial. To be sure, the Supreme Court has stated that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

With that being said, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Harding v. Cty of Dallas, Tex.*, 2018 WL 1156561, at *1 (N.D. Tex. Mar. 5, 2018) (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)). "*Daubert* requires a binary choice—admit or exclude—and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves." *Id.* (citation omitted). For this reason, "[i]n a bench trial[,] it is an acceptable alternative to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled." *SmithKline Beecham*, 247 F. Supp. 2d at 1042.

Because this case will be tried to the Court, rather than to a jury, "the objectives of *Daubert* are no longer implicated." *Harding*, 2018 WL 1156561, at *2. As previously stated, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" will suffice in attacking potentially shaky, but admissible, evidence. *Daubert*, 509 U.S. at 596. As such, Defendants' non-motion is denied.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Objections to Plaintiff's Experts (Dkt. #46) are hereby **OVERRULED**.

**SIGNED this 27th day of March, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE